United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS P. RILEY JR., | No. C 06-4367 SI |
|     Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
|     v. | |
| JO ANNE B. BARNHART, | |
|     Defendant. | |

The parties have filed cross-motions for summary judgment in this Social Security appeal. Based upon the Court's review of the parties' papers and the administrative record, the Court hereby DENIES plaintiff's motion and GRANTS defendant's motion.

**BACKGROUND**

On May 3, 2004, plaintiff Thomas Riley filed an application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Administrative Record ("AR") 56-59. Plaintiff claimed that he had been unable to work since July of 2003 due to hand, wrist and lower back pain. *Id.* at 69. The Social Security Administration ("SSA") denied the application initially and on reconsideration. *Id.* at 36, 25-29, 31-35. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 36. The hearing was held on June 13, 2005. *Id.* at 167. On December 14, 2005, the ALJ issued a decision finding that plaintiff was not disabled and denying his application. *Id.* at 12-20.

In reaching this decision, the ALJ applied the five-step sequential evaluation procedure set forth

in 20 C.F.R. § 416.920(a)(4). At the first step, the ALJ found that plaintiff had not worked since July 15, 2003. *Id.* at 19. At the second step, the ALJ found that plaintiff had the severe impairments of wrist tendinitis and lower back pain and a non-severe skin condition. *Id.* at 16, 19. At step three, the ALJ found that plaintiff's impairments did not, singly or in combination, meet or equal an impairment listed in Appendix 1 of Subpart P of Part 404 of the regulations. *Id.* The ALJ also found that plaintiff's subjective complaints about his impairments were not fully credible. *Id.* at 20. At step four, the ALJ found that plaintiff was able to perform his past relevant work as a sales promotion director, based on a residual functional capacity ("RFC") for a limited range of light work with upper extremity limitations. *Id.* at 16, 20. Because the ALJ found that plaintiff was not disabled at step four, he did not proceed to step five. *See id.*

On May 31, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision. *Id.* at 5-8. Plaintiff then filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Both parties have moved for summary judgment.

**STANDARD OF REVIEW**

A district court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is that relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). The Court must consider the entire record, including evidence that both supports and detracts from the ALJ's decision. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence is susceptible to more than one rational interpretation. *Allen v. Secretary of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984).

**DISCUSSION**

Plaintiff contends that the Commissioner's decision is not supported by substantial evidence and that it is legally flawed. Specifically, plaintiff contends: (1) the ALJ erred by not considering all of plaintiff's impairments at step three of the sequential analysis; (2) the ALJ did not properly evaluate the medical evidence; (3) the ALJ did not properly evaluate plaintiff's subjective symptoms; (4) the ALJ erred in evaluating plaintiff's RFC; and (5) the Appeals Council erred in finding there was no reason to review the ALJ decision. Defendant disagrees with these contentions and argues that the ALJ properly assessed plaintiff's RFC at step four, effectively ending the disability inquiry.

## I. Consideration of multiple impairments

Plaintiff contends that the ALJ erred by not properly considering his skin condition and stomach dyspepsia in the analysis of whether plaintiff's impairments, in combination, met or equaled a listed impairment. The ALJ's decision states,

> [A]t step two of the sequential evaluation, I find that the claimant has the severe impairments of bilateral wrist tendonitis and low back pain. The non-severe skin condition has also been considered in assessing his residual functional capacity. . . . [T]he record establishes that claimant has received treatment for a skin rash diagnosed as either scabies, eczema, or photodermatitis. Exhibit 12F. Claimant's condition was noted to have improved with prescribed lotions, and the record does not support functional limitations beyond the functional capacity assessed herein for twelve continuous months, based on claimant's skin condition. As indicated below, even additional limitations based upon that condition would not change the finding that claimant is not disabled.

AR 16-17. The ALJ also noted that plaintiff testified that he stayed out of the sun because of his skin condition, AR 17, and that the vocational expert testified that "even were claimant required to avoid temperature extremes and direct sunlight, based upon his reported skin condition, he would not be precluded from [the sales promotion director job] as generally performed." *Id*. at 19. The ALJ did not discuss plaintiff's dyspepsia.

The Court finds that the ALJ did not err in failing to address plaintiff's dyspepsia. Plaintiff has

identified only two references to dyspepsia in the record.[1] "Because the record fails to offer sufficient evidence suggesting that [plaintiff] suffered from a combination of impairments, the Commissioner did not err by failing to do a multiple impairments analysis." *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996).

The Court also finds no error in the ALJ's consideration of plaintiff's skin condition. The ALJ implicitly considered that condition at step three of the sequential analysis by stating that plaintiff's skin rashes "have improved with prescribed lotions, and the record does not support functional limitations beyond the functional capacity assessed herein for twelve continuous months." AR 17. The record supports the ALJ's determination that plaintiff's skin condition was not severe, and that any impairment resulting from the skin condition did not last or was not expected to last for a continuous period of at least 12 months. Plaintiff reported that his skin problems began in October 2004. *Id*. at 78. A medical record from March 2005 states that plaintiff's photodermatitis was "resolved." *Id*. at 149. Another medical record from June 2005 states that plaintiff has a "rash off + on" and that his photodermatitis is "improved." *Id*. at 158. Further, the ALJ considered the limitations imposed by plaintiff's skin condition – such as avoidance of extreme temperatures and direct sunlight – in assessing plaintiff's RFC. Indeed, the ALJ noted that "even additional limitations based upon that condition" would not change the ALJ's finding that plaintiff was not disabled.

Plaintiff's reliance on *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003), is unavailing. In *Celaya*, a pro se, illiterate claimant suffered from diabetes, hypertension and obesity. Before the ALJ, the claimant argued that she was disabled solely on account of her diabetes and hypertension, and the ALJ neither implicitly nor explicitly considered the claimant's obesity in concluding that the claimant was not disabled. *Id*. at 1182. The Ninth Circuit remanded with instructions for the ALJ to conduct a multiple impairment analysis that explicitly evaluated the effect of the claimant's obesity. *Id*. Here, in contrast, the ALJ discussed plaintiff's skin condition at length, and explicitly considered the severity,

---

[1] Plaintiff's motion for summary judgment cites four medical records for the assertion that "plaintiff's stomach dyspepsia issue was not acknowledged by the ALJ though it was acknowledged and treated by Dr. Chang." Motion at 17:8-9. However, only two of those records refer to plaintiff's dyspepsia. *See* AR 124, 158.

4

duration, and limitations imposed by that condition.[2]

## II. Evaluation of the medical evidence

### A. Dr. Chang

Dr. Chang was plaintiff's treating physician. At the first visit on August 18, 2004, Dr. Chang diagnosed plaintiff with carpal tunnel syndrome and recommended that he not work at any job that required him to lift, push, or perform any repetitive movements for the next six months. AR 126. Upon Dr. Chang's recommendation, Dr. Sponzili performed an "EMG" test on September 17, 2004 and found that Riley's clinical presentation was consistent with wrist tendinitis. *Id.* at 129-33. Based on the results of this test, Dr. Chang prepared a "Medical Opinion Regarding Riley's Ability To Do Work-Related Activities" in December of 2004. *Id.* at 122-23. Dr. Chang found that there were no limitations on plaintiff's ability to sit, stand, and walk, and that plaintiff should not lift more than ten pounds occasionally and five pounds frequently. *Id.* Dr. Chang also found that plaintiff should not perform reaching, fine and gross manipulation, feeling, and pushing and pulling for more than two hours a day. *Id.*

On March 7, 2005, Dr. Chang diagnosed Riley with bilateral wrist tendinitis and stated that he was unable to perform work-related duties. *Id.* at 134. Dr. Chang also recommended that plaintiff not perform any prolonged repetitive tasks requiring both of his hands, wrists, or forearms. *Id.* The March 2005 opinion does not contain a lifting restriction. In November of 2005, Dr. Chang referred plaintiff to an orthopedic specialist for an evaluation of his wrist pain. *Id.* at 165-66. Dr. Chang also referred plaintiff to a dermatologist. *Id* at 160.

The ALJ discussed Dr. Chang's various reports at length, and concluded,

---

[2] Although not entirely clear, plaintiff also appears to suggest that he is disabled due to a mental impairment. Plaintiff's motion states that Dr. Goodheart evaluated plaintiff in January 2004 and found that plaintiff "shows no psychiatric disorder," and that Dr. Goodheart stated that he wanted to see plaintiff for a psychiatric follow up if he had not gotten any treatment for his wrists or if he was "still stuck in this stalemate." AR 98. Plaintiff asserts that Dr. Goodheart's evaluation is "merely a preliminary screen to a full evaluation," and that "a severe mental impairment for Riley cannot be ruled out." Motion at 5. Plaintiff does not advance any legal argument regarding this issue. In any event, the Court finds no error by the ALJ. It does not appear that plaintiff – who was represented by counsel – ever argued before the ALJ that he was mentally impaired, and the evidence in the record affirmatively states that plaintiff was not mentally impaired. *See* AR 98; *see also* AR 95 (report from state psychiatrist stating "no medically determinable impairment").

5

> The record as a whole persuades me that claimant has the residual functional capacity (RFC) for light work, with the following upper extremity restrictions bilaterally: no forceful grasping, no repetitive pushing or pulling, and no more than occasional fine or gross manipulation. . . . This RFC is based on the record as a whole, including the August 18, 2004 and March 7, 2005 opinions by Dr. Chang, which reflect that claimant should avoid prolonged or repetitive activities using his hands, forearms, and wrists. Exhibits 9F/6 and 10F. I have considered the limitations reflected in Dr. Chang's December 20, 2004 assessment and find them generally consistent with Dr. Chang's other opinions, with the exception of the lifting limitations indication in that later assessment. Exhibit 9F/2-3. I find that there is no basis for restricting claimant's lifting capacity below the light level (10 pounds frequently and 20 pounds occasionally), because Dr. Chang's other opinions do not specify any lifting limitations and there is no evidence of any significant change in claimant's functioning with respect to his hands throughout the relevant period. I note that, while the RFC found herein is essentially consistent with the limitations indicated by Dr. Chang, the August 2004 restrictions were specified as temporary pending an EMG, and the EMG the following month shows no evidence of entrapment or neurological abnormalities, but rather, was consistent with tendinitis. To the extent that Dr. Chang's opinions can be interpreted to find claimant unable to perform the limited range of light work with significant upper extremity restrictions found herein, such opinions would be inconsistent with the evidence as a whole, including the findings and opinions of other examining and reviewing physicians, and based in large part upon claimant's subjective complaints, and are accorded limited weight on that basis.

AR 18. The ALJ also noted that Dr. Chang's December 2004 assessment was "apparently based in large part on claimant's subjective complaints and is inconsistent with the weight of the medical evidence to the extent that it imposes a greater lifting restriction or additional restrictions than found herein." *Id*. Finally, the ALJ noted that Dr. Wechsler, the examining neurologist, found no abnormalities and no significant limitations, and that the state agency reviewing physicians found no impairment imposing any significant limitation of function. *Id*. at 18-19.

Plaintiff contends that the ALJ "rejected" Dr. Chang's opinions regarding his wrist condition, and that the ALJ ignored Dr. Chang's referral for plaintiff's skin condition. For the reasons set forth above, the Court finds that the ALJ sufficiently considered plaintiff's skin condition. Moreover, the fact that Dr. Chang referred plaintiff to a dermatologist does not add anything to the substantive analysis of whether plaintiff is disabled.

With regard to the Dr. Chang's opinions regarding plaintiff's wrist condition, the ALJ in fact accepted most of Dr. Chang's opinions and found that the RFC was "essentially consistent" with Dr. Chang's opinion. AR 18. The ALJ did not, however, accept the limitations found in the initial August 2004 opinion, nor did he accept the lifting restriction found in the December 2004 opinion. *Id.*

If the ALJ rejects a treating physician's opinion, and the opinion is contradicted, the ALJ must

6

provide specific, legitimate reasons for rejecting it that are based on substantial evidence in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, the ALJ provided numerous specific, legitimate reasons for rejecting the limitations contained in Dr. Chang's August 18, 2004 and December 2004 opinions. The August 18, 2004 opinion was based upon an initial diagnosis of carpal tunnel syndrome; however, Dr. Wechsler, a neurologist, found no objective evidence of carpal tunnel syndrome. AR 122. *See Andrews*, 53 F.3d at 1041 ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."). Similarly, two state examining physicians found that plaintiff's impairments were "nonsevere." AR 118, 120.

Moreover, Dr. Chang's various opinions were internally inconsistent; she later diagnosed plaintiff with wrist tendinitis, *see* AR 133, and the March 2005 opinion by Dr. Chang did not contain the lifting restriction contained in the December 2004 opinion. These internal inconsistencies provide an additional specific and legitimate reason for disregarding the opinions at issue. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

Finally, to the extent that the ALJ discounted certain of Dr. Chang's opinions because they were largely based on plaintiff's subjective complaints – which the ALJ found lacking credibility – the Court finds that the ALJ's findings are supported, as discussed in section III below.

### B.     Dr. Sponzilli

Dr. Sponzilli conducted electrophysiological testing on plaintiff. AR 129-33. Dr. Sponzilli's report includes a section on plaintiff's self-reported medical history and symptoms, including plaintiff's statements that he suffered from forearm and wrist pain. *Id.* at 129. Dr. Sponzilli conducted a physical exam and noted "no visual deformities . . . . Range of motion of the cervical spine, left and right shoulder, elbow, wrist and hand are normal." *Id.* Dr. Sponzilli's report contains the results of various "nerve conduction studies," and concludes that "[t]here was no evidence to suggest any upper extremity entrapment neuropathy. Nor was there evidence of any axonal cervical radiculopathy. His clinical presentation is consistent with wrist tendinitis." *Id.* at 133.

The ALJ considered Dr. Sponzilli's report in his analysis of plaintiff's RFC, specifically mentioning Dr. Sponzilli's conclusion that the EMG was consistent with wrist tendinitis. AR 18. Plaintiff argues that the ALJ "failed to acknowledge Dr. Sponzilli's determination that the EMG analysis supported plaintiff's claims of pain." Motion at 17. However, Dr. Sponzilli did not determine that the EMG supported plaintiff's claims of pain. Rather, Dr. Sponzilli concluded that the EMG was consistent with wrist tendinitis. The only reference to plaintiff's claims of pain in the report is in the "history" section in which Dr. Sponzilli describes plaintiff's self-reported symptoms. AR 129-33. The ALJ did not err in his consideration of Dr. Sponzilli's report.

### C. Physical therapists

Physical therapists are not physicians; however, the general rules of deference applicable to the opinions of treating physicians are applicable to physical therapists' opinions. *See Lester v. Chater*, 81 F.3d 821, 830 n. 7 (9th Cir. 1996). Thus, if an ALJ rejects a controverted opinion of a physical therapist, the ALJ must provide specific and legitimate reasons for doing so that are supported by substantial evidence in the record. *See id.*

Although not precisely clear, it appears plaintiff contends that the ALJ failed to consider supportive evidence from physical therapists Lennon and Hewitt as to plaintiff's pain and lack of improvement. The ALJ accepted the findings in the physical therapists' reports reflecting complaints by plaintiff of intermittent pain that flared with movement and a lack of significant improvement. AR 16. The ALJ did not, however, impose the restrictions suggested by the therapists because they appeared to be temporary and because they were based on a diagnosis of carpal tunnel syndrome and the weight of the evidence showed that plaintiff was not suffering from carpal tunnel syndrome. *See* AR 102, 133, 134. Therefore, to the extent that the ALJ rejected the physical therapists' opinions, he did so for specific and legitimate reasons supported by substantial evidence in the record.

### D. Dr. Wechsler

On August 1, 2004, Dr. Wechsler, a neurologist, conducted a comprehensive orthopedic examination of plaintiff. AR 99-102. Dr. Wechsler found nothing to support a diagnosis of carpal

8

tunnel syndrome and stated that no assistive devices other than wrist braces were necessary. Dr. Wechsler further opined that there should be no limitations as to plaintiff's ability to engage in standing, walking, sitting, occasional or infrequent lifting, and that there should be no postural, manipulative or environmental limitations. Dr. Wechsler also stated that plaintiff suffered some depression, fear, and anxiety related to his homelessness and skin rashes. *Id.* at 100.

Plaintiff argues that the ALJ "impliedly refused to credit Dr. Wechsler's opinion when he granted most of Dr. Chang's limitations opinion." Motion at 21. As an initial matter, the Court notes that Dr. Wechsler imposed fewer restrictions on plaintiff than Dr. Chang, and it is unclear why plaintiff is advancing this argument. In any event, plaintiff's argument lacks merit. The ALJ adopted Dr. Weschler's opinion to the extent that it was inconsistent with Dr. Chang's opinion regarding lifting restrictions. *See* AR 18. Moreover, the ALJ adopted Dr. Weschler's opinion that plaintiff suffered tendinitis, and not carpal tunnel syndrome as originally diagnosed by Dr. Chang. *See id.*[3]

### III.    Analysis of plaintiff's subjective complaints

The ALJ stated,

> I find that claimant has medically determinable impairments that reasonably can be expected to produce the types of symptoms of which he complains; however, his testimony as to the intensity, persistence and limiting effects of his symptoms cannot be fully credited. Social Security Ruling (SSR) 96-7. The medical record establishes that claimant has received conservative treatment, including Ibuprofen, for wrist tendinitis, but more intensive treatment or substantially stronger pain medications consistent with the alleged severity of his impairments have not been prescribed. Although wrist braces have been prescribed, the record does not support the degree of impairment claimant described at the hearing. His testimony that he stopped working due to wrist pain is considered in light of the facts that he was not receiving significant medical treatment for wrist pain at that time and that he testified that his job entailed fairly strenuous activities, including chopping wood and moving furniture. The inability to perform that prior work certainly is not inconsistent with his ability [to] perform less strenuous work within the limited residual functional capacity found herein.
>
> Additional factors affecting the credibility of claimant's subjective complaints include the intermittent nature of his symptoms, as disclosed by the medical evidence and the

---

[3] Because the Court finds that the ALJ did not refuse to credit Dr. Wechsler's opinion, the Court need not address plaintiff's arguments as to why the ALJ must credit Dr. Wechsler's opinion. However, the Court notes that plaintiff's reliance on SSR 96-2p is misplaced. That ruling, *Giving Controlling Weight to Treating Source Medical Opinions,* addresses when a treating source opinion must be given controlling weight. Dr. Wechsler examined plaintiff, but did not have an ongoing treatment relationship with plaintiff. As such, he is considered a non-treating physician and SSR 96-2p does not apply to his opinions. *See* 20 C.F.R. § 404.1502.

9

> testimony, and activities such as claimant's ability to drive, which is inconsistent with the reported degree of wrist restriction and unpredictability of his symptoms. Moreover, claimant's earning's record, Exhibit 2D, reflects limited earnings generally and for several years prior to the cessation of his employment in 2003, indicating a limited motivation to work; although claimant reported that he did have substantial earnings from 1995 to 1999 and testified that he did not report his earnings, that testimony, even if considered in evaluating his limited reported earnings, would further detract from, rather than enhance, his general credibility.

AR 17-18.

Plaintiff "admits that the ALJ could have based his credibility finding on these factors so long as he considers the entire case record." Reply at 10-11. Plaintiff contends that the ALJ did not consider the entire record because the ALJ failed to discuss "all of the skin disease evidence" and failed to discuss the physical therapists' opinions, test results and "multiple regimens" all of which were supportive of Dr. Chang's opinion that plaintiff could not work.

If an ALJ determines a claimant's testimony as to the extent of his impairments is unreliable, the ALJ "must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ must consider the record as a whole and may not isolate a "specific quantum" of evidence to support his conclusion. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). The ALJ may properly consider the daily activities of a claimant when evaluating credibility if they provide contradictory evidence to his asserted limitations. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ is "responsible for determining credibility and resolving conflicts in medical testimony [and] is likewise responsible for resolving ambiguities." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's interpretation of plaintiff's testimony is reasonable and supported by substantial evidence, it is not the Court's role to second-guess it, even where a contrary finding might be reasonable. *See Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ provided specific reasons for discounting plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms. Specifically, the ALJ found plaintiff's statements about the unpredictability and restrictiveness of his symptoms were inconsistent with plaintiff's stated ability to drive. AR 18. Moreover, the ALJ found that plaintiff's failure to report his earnings from

10

1995-1999 detracted from his credibility. *Id.* The ALJ found that plaintiff's testimony regarding his pain at the time he quit working had to be considered in light of the facts that he was not receiving medical attention at the time and the job involved strenuous activities. *Id.* at 17. The ALJ also considered plaintiff's limited earnings generally prior to his cessation of work in 2003 as an indication of a limited motivation to work. *Id.* Finally, the Court incorporates the discussion above to the extent that plaintiff argues that the ALJ did not properly consider the medical evidence in the record.

**IV.    The RFC assessment**

At step four of the inquiry, the ALJ found that plaintiff has the RFC for light work with bilateral upper extremity limitations, including: no forceful grasping, repetitive pushing or pulling, and not more than occasional fine or gross manipulation. AR 16, 20. Based on this finding, the ALJ found that plaintiff was not precluded from performing his past relevant work as a sales promotion director and was therefore not entitled to benefits. *Id.* A vocational expert testified that a person with the limitations included in the RFC could perform plaintiff's past relevant work as a sales representative in publishing. AR 206-08. The expert also testified that even if plaintiff needed to avoid extreme temperature or sunlight, this position would be feasible because it is performed indoors in buildings with heating and air conditioning. *Id.*

Plaintiff argues the ALJ erred in assessing his RFC because the ALJ did not properly consider plaintiff's skin condition and did not adequately consider the medical evidence, including the physical therapists' opinions and Dr. Chang's lifting restrictions. For the reasons set forth above, the Court finds that these arguments lack merit.

**V.    Evidence submitted to the Appeals Council**

Finally, plaintiff contends that the Appeals Council erred by not remanding his case to the ALJ based upon two pieces of evidence that he submitted in connection with his appeal. When he sought review of the ALJ's decision denying benefits, plaintiff submitted a document dated October 27, 2005,

11

and titled (apparently in plaintiff's handwriting)[4] "Formal Request for G.A. Hearing <u>Not</u> to Go to <u>Work</u> And <u>Not</u> to have G.A. Terminated"; the document is signed by plaintiff and states that plaintiff was receiving "fluorouricil chemotherapy treatment for actinic keratosis[5] - onset Sept. 2004." AR at 162. Plaintiff also submitted a doctor's referral to an orthopedic specialist for plaintiff's "wrist pain"; on these documents, in what appears to be plaintiff's handwriting, are the words "hand surgery" and "hand-wrist surgery." *Id*. at 165-66.[6]

Plaintiff contends that the Appeals Council should have remanded to the ALJ based upon this new evidence. Specifically, plaintiff argues that his statement that he was receiving "fluorouricil chemotherapy treatment for actinic keratosis – onset Sept. 2004" on his request for a G.A. hearing constitutes evidence of a new diagnosis, and also shows increased severity dating back to September 2004. However, to the extent plaintiff argues that his handwritten statement on the G.A. form constitutes a "new diagnosis," plaintiff is wrong. This document is not medical evidence as defined by the regulations. *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Moreover, as discussed above, the record shows that the ALJ considered plaintiff's skin condition and that he found it was not severe. *See Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988) (holding Appeals Council did not err in refusing to review ALJ decision based upon new evidence when such evidence only restated existing conflicting evidence and "added nothing of substance to the record.").

---

[4] Defendant asserts, and plaintiff does not deny, that it is plaintiff's handwriting on these documents.

[5] Actinic keratosis is a "skin condition characterized by rough, scaly patches on the skin of [the] face, lips, ears, back of [the] hands, forearms, scalp and neck. The cause is frequent or intense exposure to ultraviolet (UV) rays, typically from the sun. Many doctors consider actinic keratosis to be precancerous because it can develop into skin cancer." www.mayoclinic.com/health/actinic-keratosis/DS00568/DSECTION=1.

[6] Plaintiff submitted additional documents to the Appeals Council, such as a "Proposal for an Extension Questionnaire" for Homeward Bound of Marin, a transitional housing shelter and a "Notice of Hearing" dated November 4, 2005 related to plaintiff's application for General Assistance. AR at 163-64. Plaintiff does not contend that these documents warranted remand to the ALJ.

Plaintiff also contends that the "hand-wrist surgery referral" warranted remand because the referral "goes to Dr. Chang's credibility evaluation of the severity of plaintiff's subjective complaints." Motion at 13. Although somewhat unclear, plaintiff appears to be arguing that Dr. Chang's referral of plaintiff to a specialist provides additional evidence that plaintiff's wrist condition was severe. As an initial matter, the Court finds that plaintiff has mischaracterized Dr. Chang's referral. The documents in the record state that plaintiff was being referred to an orthopedic specialist for "wrist pain"; the only references to "surgery" appear to be in plaintiff's handwriting. AR 165-66. In any event, the fact that plaintiff received a referral to a specialist for his wrist pain does not constitute "new" or "material" evidence because the ALJ considered plaintiff's evidence regarding his unimproved wrist condition. *See* AR 16-18 (discussing medical evidence and noting that there has been no significant improvement).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for summary judgment. (Docket Nos. 8 and 9).

**IT IS SO ORDERED.**

Dated: July 11, 2007

SUSAN ILLSTON
United States District Judge1